FILED
98 APR 22 PM 1:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MICHAEL HARRIS, | } |
| Plaintiff | } |
| vs. | } CIVIL ACTION NO. |
| | } CV-97-AR-409-E |
| CITY OF SYLACAUGA et al, | } |
| Defendants | } |

ENTERED
APR 22 1998

### MEMORANDUM OPINION

Presently before the court is a motion for summary judgment by defendants City of Sylacauga ("Sylacauga") and six of its police officers. Plaintiff, Michael Harris ("Harris"), sues all defendants alleging an unconstitutional application of excessive force proscribed by 42 U.S.C. § 1983. Harris also sues the city for alleged negligent hiring, retention and supervision. Finally, Harris asserts state law claims of battery and outrage against the named police officers, individually and in their official capacities. For reasons spelled out more fully below, the court finds that the defendants are entitled to summary judgment on all claims.

### I. FACTS[1]

On April 16, 1996 Harris was involved in a altercation with

---

[1] This court has an obligation to view the facts in the light most favorable to the plaintiff. *Swint v. City of Wadley*, 51 F.3d 988, 995 (11th Cir. 1995).

the police. The altercation began when Harris received a telephone call from his daughter-in-law, Michelle Harris ("Michelle"), who was calling from work. Michelle screamed and cursed at Harris about a 1967 Mustang which was parked in Harris' yard. During this conversation, Harris never threatened Michelle. He did, however, tell her he was coming to talk with her face-to-face. Michelle worked at a beauty salon owned by Harris's former wife, Alice Harris ("Alice"). As Harris approached the shop he could feel himself becoming agitated so he drove past the salon, drove down a side street, and then drove back toward the salon. (Harris Dep. at 120). During this time he somehow inadvertently knocked over a tray he carried in his car that was filled with coins and miscellaneous odds and ends. Harris stopped his truck and bent down to pick up the contents of the tray.

Meanwhile the police had arrived at the salon after receiving a dispatch message indicating that Harris was in route to the salon to cause someone bodily harm. (Kidd Trial Testimony at 73). Officer Michael Smith ("Smith") approached Harris while he was in the process of picking up the contents of the tray and began talking with Harris. Harris indicated that he needed to pick up the items from the floor of his truck and Smith told another officer to give Harris a minute to finish.

2

However, suddenly Captain Kenneth Brasher ("Brasher") appeared at the truck window and asked Harris if he would come down to the "office." (Harris Dep. at 132.) Harris responded "no," because he "had had enough" and just wanted to go home. (Harris Dep. at 132.) Brasher then reached through the truck window and grabbed Harris by the neck. Brasher commented that he was "tired of this," that he was going to "break" Harris from "this," and that Harris was "no crazier" than he. (Harris Dep at 131 - 34.) Brasher and Smith then began pulling on Harris who held onto his truck's steering wheel. (Harris Dep. at 135 - 36). Then one of the officers pulled Harris by the feet. After the officers pulled him from the truck, the officers dropped Harris causing his head to hit the pavement. Once on the pavement, the officers continued choking Harris until one of the officers told the other officers to let Harris go so that he could breath. One of the officers then put his knee up against Harris' back and one of the officers kicked Harris twice. The officers then handcuffed Harris, pulled him up by the back of his pants and took him to jail. Harris was charged with disorderly conduct and resisting arrest.[2]

After Harris complained that he needed to see a medical

---

[2] After the officers pulled him from the truck, Harris cannot identify which officer(s) gabbed or kicked him. (Harris Dep. at 138 - 40).

3

doctor for the injuries he allegedly sustained during the altercation, an officer took him to see Dr. N. Donald Chambers ("Chambers"). Harris complained to Chambers about chest pains as well as scratches. After Chambers examined Harris, the officer took Harris back to jail. Chambers did not prescribe any medication for Harris. (Harris Dep. at 154 - 55). Several days after his release from jail, Harris went to the emergency room because he was experiencing chest pains. Harris testified that the emergency room physician diagnosed him as having a torn muscle in his chest. (Harris at 160 - 62).

Harris knew several of the officers who arrested him because he himself had worked for six years as a Sylacauga police officer. (Harris Dep. at 25). He left that job to take a position as the police chief in another town. (Harris at 25). In addition, the parties were familiar with each other because Harris had been involved in numerous altercations requiring Sylacauga police intervention:

- Harris was arrested for assault after an incident on a softball field. (Harris Dep. at 9 - 11).
- Harris was arrested for menacing and subsequently placed on probation for a year. (Harris Dep. at 12).
- Harris was arrested for reckless driving and attempting to allude the police. (Harris Dep. at 12).

4

- His daughter-in-law signed out a warrant for his arrest prior to the date of the incident at issue in this case. (Harris Dep. at 14).

- On three or four occasions, his former wife called the police on him. (Harris Dep. at 15 - 16).

- His present wife has called the police on him at least twice. (Harris Dep. at 16)

- At least one of his arrests was for domestic violence. (Harris Dep. at 189).

One of his earlier arrests involved two of the defendants, Brasher and Marty Batson. A third defendant, Wayne Murchison, once responded to a police call and discovered Harris holding a shotgun in his mouth, threatening to kill himself. (Harris Dep. at 71 - 72). Rather than to take Harris to jail after some of the incidents, the police took him to a hospital or to a mental health facility. (Harris Dep. at 17). Harris is presently receiving total disability from the Social Security Administration because of mental illness. (Harris Dep. at 53 - 54, 56, 60).

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c), F.R.Civ.P., summary judgment is appropriate where "there is no genuine issue as to any material fact and...the moving party is entitled to a judgment as a matter

of law." F.R.Civ.P. 56(c).

### III. CLAIMS AGAINST THE CITY OF SYLACAUGA

Harris directly asserts claims of excessive force against Sylacauga, as well as claims of negligent hiring/retention and negligent supervision. He also asserts claims of battery and outrage against the police officers in their official capacities, thereby indirectly asserting such claims against Sylacauga. *See Carr v. City of Florence, Alabama*, 916 F.2d 1521, 1524 (11th Cir. 1990) (holding that a suit against an individual in his official capacity is, in effect, a suit against the governing body). However, Harris now concedes that only his negligent hiring/retention and negligent supervision claims should survive summary judgment as against Sylacauga. (Harris Br. at 10). Accordingly, Sylacauga is entitled to summary judgment on the excessive force claim, as well as the battery and outrage claims. Likewise, the officers are entitled to summary judgment on the battery and outrage claims asserted against them in their official capacities.

## IV. EXCESSIVE FORCE CLAIM AGAINST THE OFFICERS IN THEIR INDIVIDUAL CAPACITIES

Harris claims that the officers deprived him of his Fourth Amendment right, as asserted under § 1983, to be free from excessive force during an arrest. *See Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997) (noting that the right to be free from excessive force is a right grounded in the Fourth Amendment). However, the police officers assert the defense of qualified immunity. A governmental official who asserts qualified immunity as a defense must first show that he was acting within the scope of his discretionary authority during the incident in question. *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995); *McMillian v. Johnson*, 878 F. Supp. 1473, 1490 (M.D. Ala. 1995), *aff'd in part*, 88 F.3d 1554 (11th Cir. 1996)(noting that discretionary authority means as a part of, and in accordance with, the state actor's normal job duties). Because police officers are authorized to make arrests, there is nothing whatsoever to indicate that the Sylacauga officers were acting outside the scope of their discretionary authority when they arrested Harris.

Therefore, in order for Harris's claims to go forward, the burden shifts to him to show that the officers violated "clearly established statutory or constitutional rights" of which a

7

reasonable officer in their position would have known. *See Smith v. Mattox*, 127 F.3d 1416, 1418 (11th Cir. 1997) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). "A reasonable [officer's] awareness of the existence of an abstract right, such as a right to be free of excessive force, does not equate to knowledge that his conduct infringes the right." *Smith*, 127 F.3d at 1419. Generally, a plaintiff must come forward with a "controlling and factually similar case" which shows that the level of force used was excessive. *Id.*

When such precedent is unavailable, as in the present case, a plaintiff can overcome a qualified immunity defense "only by showing that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." *Id.* (citing, *United States v. Lanier*, ___ U.S. ___, ___, 117 S. Ct. 1219, 1227 (1997)). When determining if the conduct in an excessive force case was obviously outside Fourth Amendment protection, the court should weigh all the circumstances including the following factors: (1) the severity of the crime, (2) whether the suspect poses an immediate threat to the officer or bystanders, and (3) whether there was any effort to resist arrest. *Smith*, 127 F.3d at 1419 (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865,

1872 (1989)). Finally, the court should consider the "need for force, the amount of force used, and the injury inflicted." *Jones v. City of Dothan, Alabama,* 121 F.3d 1456, 1460 (11th Cir. 1997).

The court is not convinced that the officers' conduct was so obviously outside the protection of the Fourth Amendment that a reasonable officer would have known he was violating clearly established rights. While the crime for which he was charged, disorderly conduct, was not severe, and the level of force used may have been more than was necessary, several factors militate toward a finding that it was not "readily apparent" to a reasonable officer that his conduct was unlawful. Despite his protestations to the contrary, Harris's own testimony clearly shows that he resisted arrest:

> The first thing [the officer] asked me was would I come down to the office and talk to him. And I told him no, I just wanted to go home. I had had enough of all this.... I don't know because I was holding on to the steering wheel. And I could feel my feet being pulled out. Somebody had ahold to my feet.

(Harris Dep. at 132, 135).

In addition to resisting arrest, the record shows that the police could have reasonably believed that Harris posed an immediate threat of harm. The court is aware that it must

9

assume, for the sake of summary judgment, that Harris never threatened to hurt Michelle or Alice. However, Michelle testified that Harris threatened to kill her. (Michelle Dep. at 23). In addition, one of the officers testified that he received a dispatcher's report indicating that Harris had threatened to inflict bodily harm on someone at the beauty salon. (Kidd Trial Testimony at 73). Given Harris's past attempted suicide, his mental illness and his arrests for assault, menacing and domestic violence, it would not have been unreasonable for the police to <u>believe</u> (whether or not it was true) that Harris had threatened someone and therefore posed a threat to himself and/or others. To the contrary, it would have been <u>reasonable</u> to have such a belief.

Another factor which militates in favor of the defendants is the lack of evidence regarding Harris's alleged injuries. Harris has only produced his own hearsay testimony regarding the nature and extent of his injuries. *See* Harris Dep. at 160 - 62). Thus, the lack of evidence regarding his injuries, his resistance to the arrest and the potential threat he posed indicate that the level of force used was not excessive.

> Such officials as police officers...who enjoy only
> qualified immunity, routinely make close decisions in
> the exercise of the broad authority that necessarily is

> delegated to them.... [O]fficials should not err
> always on the side of caution. "Officials with a broad
> range of duties and authority must often act swiftly
> and firmly at the risk that action deferred will be
> futile or constitute virtual abdication of office."

*Davis v. Scherer*, 468 U.S. 183, 196, 104 S. Ct. 3012, 3020 (1984) (citation omitted).

### V. STATE LAW CLAIMS ASSERTED AGAINST THE OFFICERS IN THEIR INDIVIDUAL CAPACITIES

In addition to his federal claims, Harris asserts state law claims against the defendants for battery and outrage. Like his federal claims, these state law claims cannot survive summary judgment. First this court notes that law enforcement officers are immune under Alabama law from tort liability when performing discretionary functions within the line and scope of their employment. Code of Alabama § 6-5-338. Because there is no evidence that the officers' conduct went beyond the bounds of their discretionary authority, they are immune from suit on the state law claims. However, even if immunity were not available to these defendants Harris's state law claims would still fail.

**A. Battery Claims**

Under Alabama law "the [unlawful] touching of another in a hostile manner" constitutes a battery. *Wright v. Wright*, 654 So.

11

2d. 542, 544 (Ala. 1995) (citations omitted). Because the viability of Harris's battery claim turns on whether the defendants' conduct was unlawful, such a claim is without merit. The officers lawfully arrested Harris and the evidence does not support a claim for excessive force. Consequently, summary judgment is appropriate as to the battery claim.

### B. Outrage Claims

"The Alabama Supreme Court has made it clear that the tort of outrage is a limited remedy to be applied in only egregious circumstances." *Portera v. Winn Dixie of Montgomery, Inc.*, No. ___ F. Supp. ___, CIV. A. 97-A-158-N, 1998 WL 119957, at *17 (M.D. Ala. March 10, 1998) (citation omitted). Indeed, "the conduct complained of must be 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" *Id.* (citation omitted). Even if this court accepts Harris's hearsay testimony regarding the extent of his injuries, some scratches and a torn chest muscle hardly indicate a level of force which goes "beyond all possible bounds of decency." *See id.* Accordingly, summary judgment for the individual defendants is appropriate on the outrage claim.

## VI. NEGLIGENT HIRING/RETENTION CLAIMS ASSERTED AGAINST SYLACAUGA

Harris contends that Sylacauga should be held liable for its negligent hiring/retention of the defendants, as well as its negligent supervision of the defendants involved in the April 16, 1996 incident. To proceed on these claims, "[p]laintiff must show that the alleged incompetence of the employee was actually known to the employer or was discoverable by the employer if it had exercised care and proper diligence." *Portera*, 1998 WL 119957, at *21 (citing *Ledbetter v. United Am. Ins. Co.*, 624 So. 2d 1371 (Ala.1993)). "This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice." *Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1003 (citations omitted).

Applying this standard, the state law claims Harris asserts against Sylacauga do not survive. Because the evidence does not support a claim for excessive force, battery or outrage, Harris cannot show any incompetence on the part of the officers. However, even if such claims could survive summary judgment, Harris cannot show that Sylacauga knew or had reason to know of the alleged misconduct.

13

Harris contends that the lawsuits filed against two of the defendant officers and two additional suits filed against Sylacauga directly put the city on notice that its police force was engaged in constitutionally impermissible behavior. Specifically Batson and Mike Eubanks were sued separately under § 1983 and Sylacauga was sued under § 1983 for rape by a former prisoner and for excessive force by another citizen. (Pl.'s Ex. 6 (Doc. 45) at ¶7,8).

These lawsuits are not enough to establish that Sylacauga had notice that there was a pattern of alleged misconduct. These lawsuits doe not "show specific acts of incompetency," because there is no indication that they resulted in a finding of liability against an officer or Sylacauga. Indeed, the case against Eubanks was dismissed with prejudice. (Pl.'s Ex. 6 (Doc. 45) at ¶7). In addition, these cases are not of sufficient "nature, character, and frequency" so as to put Sylacauga on notice that a problem existed within its police force. *See Big B*, 634 So. 2d at 1003. A total of four cases, one against two different officers and two against the city, do not indicate a pattern of misconduct. Such cases are not uncommon. Indeed, Harris admits that he was sued for excessive force while on the Talladega police force. (Harris Dep. at 6 - 7).

Finally, these cases certainly do not support a finding that the officers were hired in a negligent manner. There is no evidence that Sylacauga "should have, or that it could have, foreseen," prior to hiring the officers, that they "would or might commit" the alleged wrongs. *See Hargrove v. Tree of Life Christian Day Care Ctr.*, 699 So. 2d 1242, 1245 - 46 (Ala. 1997).

## VI. CONCLUSION

Accordingly, the court finds that the defendants are entitled to summary judgment on all counts. The court declines to reach the merits on the issue of Sylacauga's immunity from punitive damages, *See* Ala. Code § 6-11-20, and the issue of the damages limitations statute. *See* Ala. Code § 11-47-190.

Even assuming the truthfulness of Cole's deposition testimony, this court is unable to find any genuine issues of fact to support the claims asserted in his complaint. Therefore, summary judgment for the defendants is appropriate.

A separate appropriate order will be entered.

DONE this 22nd day of April, 1998.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE